IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBERT AGAPITO MARTINEZ, | ) | Case No. 08-41344-13-abf |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JENNIFER HUMPHRIES, | ) | Adversary No. 08-4111-13-abf |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT AGAPITO MARTINEZ, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

The parties were briefly the owners of All Pro Fencing, LLC, a Missouri limited liability company which operated from February 2006 until it ceased operations in June 2006. This nondischargeability action is based on 11 U.S.C. § 523(a)(4) and (6). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For reasons that follow, judgment will be entered in favor of the Debtor.

Plaintiff Jennifer Humphries and her husband, Ed, were and are next-door neighbors of the Debtor, and Ed and the Debtor were previously friends. In February 2006 the parties organized a limited liability company known as All Pro Fencing for the purpose of installing fences and selling related products and services. The Debtor initially believed he would be in business with Ed. However, prior to formation of the LLC, he agreed that Jennifer could be substituted as the other owner. At the time of formation, the parties entered into an oral agreement to govern the affairs of All Pro Fencing. In a lawsuit litigated prior to the Debtor's

bankruptcy filing, the state court held that that oral agreement was memorialized by a document denominated "Partnership Agreement" which was never actually signed but accurately reflected the parties' agreement. Under that agreement, each party agreed to make a $3,000 capital contribution. Debtor contributed $2,500 in cash, which was obtained by a loan from American General Financial Services. Plaintiff's contribution consisted of equipment and supplies for which she or Ed incurred a credit card debt.

Almost from the beginning, Jennifer and the Debtor disagreed over the operation and direction of the LLC. After weeks of bickering, the situation deteriorated. On May 12, 2006, Jennifer offered to buy out the Debtor's interest in the LLC and Ed presented the Debtor with a check in the amount of $2,700 drawn on All Pro's business account at Union Bank. At that time, Jennifer deposited personal funds in the account to cover this check. The Debtor took possession of the check, but did not cash it. Jennifer, believing that the buyout proposal had been rejected, subsequently caused the personal funds which had been deposited to be withdrawn from that account.

Instead of accepting the offer, the Debtor offered to buy out Jennifer with the financial help of a new partner. Thereafter, Ed had a conversation with that person, who then withdrew her support for the venture. Subsequent to that, on June 2, 2006, without Jennifer's authorization or consent, the Debtor withdrew $2,300 from All Pro's account. He subsequently deposited $400.00 of those funds back into the account. His motivation in withdrawing those funds is central to this case.

All Pro Fencing, LLC has never been dissolved. Prior to the bankruptcy, Jennifer and All Pro brought suit in the Circuit Court of Jackson County, Missouri. After a trial *de novo,* on appeal from a judgment in the Small Claims Division of such court, the Circuit Court held that the Debtor was liable to both All Pro Fencing and Jennifer in the total amount of

$5,476.03, based on breach of contract, but that $3,000 was already garnished or subject to garnishment based on the Small Claims judgment, leaving a net Circuit Court judgment of $2,476.03. Debtor testified that in excess of $2,000 has actually been garnished based on the Small Claims judgment.[1]

The Debtor filed for bankruptcy protection on April 10, 2008. Thereafter, Jennifer filed this adversary action seeking to have the debt declared nondischargeable under 11 U.S.C. § 523. At the trial in this court, the only evidence bearing on dischargeability under § 523 related to the Debtor's withdrawal of the net sum of $1,900 from the company bank account.

## LEGAL ANALYSIS

A person objecting to the discharge of a debt must prove each and every element by a preponderance of the evidence.[2]

### 11 U.S.C. § 523(a)(4)

In order to prevail on a nondischargeability cause of action under § 523(a)(4), Jennifer must prove that the debt was for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Her first problem is that in this case, unlike in the state court case, All Pro Fencing is not a Plaintiff. To the extent that the Debtor could be found to have committed fraud or defalcation in a fiduciary capacity, embezzlement or larceny in taking funds from the account, those funds belonged to All Pro Fencing, not Jennifer. For that reason alone, she is not entitled to relief under § 523(a)(4). Nevertheless, I will consider her

---

[1] I note that this court previously avoided Jennifer's judicial lien as to $367.73 in wages that had been withheld but not yet paid to her at the time the bankruptcy case was filed. Case No. 08-41344, Docs. 31 and 46.

[2] *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 661, 1126 Ed.2d 755 (1991).

3

request for relief as if All Pro Fencing had been a party.

In order to prove "fraud or defalcation while acting in a fiduciary capacity," a Plaintiff must prove (1) that a fiduciary relationship existed between her and the Debtor; and (2) that the Debtor committed fraud or defalcation in the course of that fiduciary relationship.[3] The first element is a question of federal law.[4] "'Acting in a fiduciary capacity' is limited in application to technical or express trusts, not to trusts that may be imposed because of the alleged act of wrongdoing from which the underlying indebtedness arose."[5] For purposes of § 523(a)(4), the fiduciary capacity must arise from an express trust, not a constructive trust or mere contractual relationship.[6] This relationship is more narrowly defined under federal law than under the general common law.[7] Here, nothing in the Partnership Agreement imposes any fiduciary duty on the Debtor as to company funds. Such agreement only provides that control and management of All Pro Fencing are to be split between the parties, and that adequate accounting records shall be maintained. Since the partnership agreement does not create an express or technical trust, All Pro Fencing would not be entitled to relief for fraud or defalcation in a fiduciary capacity, even if it had been made a party.

In contrast to fraud and defalcation, embezzlement and larceny need not occur within a fiduciary capacity in order to be nondischargeable under § 523(a)(4).

---

[3] *Jafarpour v. Shahrokhi (In re Shahrokhi)*, 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001).

[4] *Id.*

[5] *In re White*, 315 B.R. 741, 748 (Bankr. D. Neb. 2004) (citing *Hunter v. Philpott*, 373 F.3d 873 (8th Cir. 2004)); *In re Cochrane*, 124 F.3d 978 (8th Cir. 1997) (same).

[6] *In re Long*, 774 F.2d 875, 878-89 (8th Cir. 1985).

[7] *In re Shahrokhi*, 266 B.R. at 707.

> Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking. The required elements of embezzlement are: (1) appropriation of funds for the debtor's own benefit by fraudulent intent or deceit; (2) the deposit of the resulting funds in an account accessible only to the debtor; and (3) the disbursal or use of those funds without explanation of reason or purpose.
>
> Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner. As distinguished from embezzlement, the original taking of the property must be unlawful. . . . [8]

Here the parties had agreed that the Debtor would be a signer on All Pro Fencing's checking account. Therefore, larceny is not applicable.

As to embezzlement, the issue is whether the Debtor removed the funds by fraudulent intent or receipt. I find that he did not. Approximately three weeks prior to his taking of those funds, he had been given a check by Ed for $2,700, drawn on the same account, as payment for his share of the LLC. He had not cashed that check, hoping instead to persuade another investor to buy Jennifer out. When that failed, he contacted the bank and was told that that check would not clear, but that a check for $2,300 would clear, leaving approximately $50 in the account. In lieu of the check he was holding for $2,700, he took the lesser amount out. When advised by Jennifer that Ed was owed $340 in wages, and another worker was owed $150, the Debtor put $400 back into the account, leaving a net withdrawal $1,900. He then used those funds to pay on the loan he had taken out to invest in All Pro Fencing. The Debtor's testimony to this effect is consistent with his testimony in the state court proceeding.[9] I find that he did not act with fraudulent intent or receipt in removing those

---

[8]  4 *Collier on Bankruptcy* ¶ 523.10[2] (15th ed. rev.)

[9]  Tr. Ex. 14 at 17-19, 49-52.

funds. In any event, as stated above, since Jennifer, and not All Pro Fencing, is the Plaintiff here, the Debtor is not liable under § 523(a)(4).

## 11 U.S.C. § 523(a)(6)

In order to prevail under § 523(a)(6), Jennifer must prove "willful and malicious injury by the Debtor" to her or to her property. Unlike Section 523(a)(4), failure to include All Pro Fencing as a party is not fatal here, if she can demonstrate that the Debtor removed the funds from the account willfully and maliciously in order to injure her or her property. Because the word "willful" in 523(a)(6) modifies the word "injury," the Supreme Court has held that "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[10] In order to prove such act was malicious, the plaintiff must prove that it was "targeted at the creditor ('malicious'), at least in the sense that the conduct is certain or almost certain to cause financial harm."[11] In sum, this provision requires a deliberate injury, not just a deliberate act that leads to injury. The Debtor must intend the consequences of the act, not just the act itself. In addition, if the Debtor desired to bring about the injury, or was substantially certain that the injury would result, the willfulness element can be established.[12] Jennifer could prevail if she could establish that the removal of the funds from the account exposed her to personal liability on debts of the business, and that the Debtor acted willfully and maliciously to bring about that result.[13]

---

[10]   *Geiger v. Kawaauhau,* 523 U.S. 57, 61118 S.Ct. 974, 140 L. Ed.2d 90(1998).

[11]   *In re Long,* 774 F.2d 875, 881 (8th Cir. 1985).

[12]   *Blocker v. Patch,* 526 F.3d 1176 (8th Cir. 2008).

[13]   I note that the Plaintiff seemed to believe that the members of a Limited Liability Company are personally responsible for its debts. In contrast to a general partnership, an LLC is established for the purpose of protecting them from such personal liability. Mo. Rev. Stat. Ann. §

The evidence shows that the Debtor believed that the parties had established an LLC in order to protect them from personal liability.[14] The Debtor seems to have been aware that Ed, who is not a party to this case, signed a personal guarantee on a Home Depot credit card that was used to purchase equipment or supplies for the company.[15] At trial in bankruptcy court, Jennifer testified that she and the Debtor were personally liable for an IRS assessment in the amount of $151.00 for unpaid payroll taxes, as well as the funds due the employees. In addition, Jennifer testified that there were obligations due to Summit Publishing and AT&T for which she believed she might be personally responsible, but offered no evidence in the form of personal guarantees or otherwise. In any event, I find that the Debtor did not remove the net sum of $1,900 from the company account with the intention of exposing Jennifer to personal liability. Instead, he removed those funds because they represented less than the amount of the check that had been given to him by Ed from the same account, and because he intended to use those funds to repay the loan he had taken out to invest in the company. I find further that he neither desired to bring about such injury to Jennifer, nor was substantially certain that such injury would result. Consequently, Jennifer has failed to establish that the debt is nondischargeable as a willful and malicious injury under § 523(a)(6).

Based on the above reasoning, judgment will be entered in favor of the Debtor. An Order in accordance with this Memorandum Opinion will be entered this date.

---

347.057.

[14] Tr. Ex. 14 at p. 36.

[15] *Id.*

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 8/1/08